Rockingham,
Dec. 3, 1907.

### LADD, *Ex'r,* v. LADD *& a., Ex'rs.*

Where a will directs executors to slate the roofs of the testator's buildings
and repair the foundations, in case he dies without making "contemplated
repairs upon the roofs," they are authorized to make such repairs upon the
foundation of each building as the increased weight of the superstructure
necessitates, when it is apparent that such was the testator's design.

Evidence as to the oral declarations of a testator is not admissible to explain
the meaning of language employed in the will.

A bequest to nieces of one hundred dollars for each year that each should live
with the testator, followed by a provision that C " shall in any event receive
the full sum of one thousand dollars," does not give C that sum in excess of
what another niece would receive, but merely fixes the amount payable to
her in the event of her not living with the testator ten full years.

BILL IN EQUITY, for a construction of the will of Lydia W.
Ladd, of which the parties are all executors, and for instructions
as to its execution. Transferred from the April term, 1907, of
the superior court by *Pike,* J.

The testatrix made her will on April 25, 1889, executed a codi-
cil thereto on May 14, 1898, and died on March 1, 1904. She
owned a farm, the buildings thereon consisting of a main house,
ell, barn, shed connecting the ell and barn, cornhouse, and wood-
shed. Between the date of the codicil and the time of her death she
caused the roof of the main house, one half of the roof of the ell,
and the whole of the roof of the barn to be slated, and also put

props under the barn to sustain the added weight of the slate. At the trial the defendants introduced evidence to establish the above facts, and, subject to the plaintiff's objection, evidence of Lydia's declarations of intention as to what repairs she contemplated making upon the buildings. The court did not pass upon the question of admissibility, but transferred the case with a transcript of the testimony.

The material portions of the will and codicil are stated in the opinion, with the exception of the following clause: "Whereas in my last will and testament I gave to my niece, Clara M. Ladd, the sum of one hundred dollars for each year she may have lived with me, at and prior to my death, now I do hereby revoke said bequest to said Clara, and instead thereof do hereby give her the sum of five thousand ($5,000) dollars in addition to the sum of five hundred ($500) named in my will. And I do revoke the provision in my will giving to any other of my nephews and nieces, living with me at my death or having lived with me prior thereto, for the period there named the sum there named, but this revocation shall not affect any other bequests, either in my will or this codicil, to said Clara or any other of nephews and nieces, excepting so far as the same may be modified in this codicil."

The instruction of the court is desired as to the following questions: (1) Is it the duty of the executors, under the provisions of the codicil, to have the roofs of the farm buildings slated and to repair the foundations of the buildings? (2) If it is the duty of the executors to slate the roofs and repair the foundations, what is the meaning of the term "repairs," as used by the testatrix in the codicil? (3) Is Clara M. Ladd entitled under the provisions of the will and the codicil to the sum of $1,000 in addition to the sum of $5,500 which she has been paid?

*Martin & Howe*, for the plaintiff.

*Frink, Marvin & Batchelder*, for the defendants.

BINGHAM, J. The codicil to the testatrix's will contained the following provision: "If I should die before making contemplated repairs upon the roofs of my buildings, then I direct my executors to have the roofs of the buildings of my farm slated, and to make such repairs on the foundations of the same as they, in consultation with the occupants of my house, may deem proper." It seems that by this provision the testatrix made the direction to her executors as to slating the roofs and repairing the foundations of her buildings dependent upon her death without having completed the contemplated repairs upon the roofs; and although she does not expressly

state what she means by the words " contemplated repairs upon the roofs," it is made reasonably certain from other terms employed in the same paragraph that slating is what she had in mind, and, as incident to this, such reasonable repairs in the way of strengthening the timbers of the building as might be necessary to sustain the added weight and render slating practicable. If the testatrix had not contemplated the use of slate in repairing the roofs, it is improbable that she would have directed her executors to use slate to complete the repairs, in case she died without having completed them. It is not too much to say that what she directed her executors to use to complete the work she purposed using herself, so that the buildings, when the repairs were made, would be alike in character and appearance. It is equally certain from the terms of the codicil that what the testatrix contemplated with reference to the extent of the slating was coextensive with what she directed her executors to do—to slate the roofs of all the buildings. These conclusions are confirmed by the evidence disclosing the conduct of the testatrix from the time she made the codicil to the time of her death, and independently of and without considering her express declarations of intention. It is the general rule that declarations of intention are not admissible to explain what a testatrix meant by the terms employed in her will, and this case does not fall within any exception to that rule. But the rule does not preclude a consideration of the attending circumstances as aids in applying the will, for the purpose of ascertaining what was meant by the terms employed. *Bishop* v. *Holt,* [1900] 2 Ch. 620, 624.

In considering the question of the extent to which the executors may go in making repairs upon the foundations of the buildings, under the authority directing them to " make such repairs on the foundations of the same as they, in consultation with the occupants of my house, may deem proper," the evidence submitted, so far as it may properly be considered, does not lend any material aid. It is reasonably clear, however, that under the authority conferred by this clause they are not authorized to enlarge the capacity of the buildings by raising them a story higher, or by excavating beneath them for a cellar. *State* v. *White,* 16 R. I. 591; *Stevens* v. *Milnor,* 24 N. J. Eq. 358; *Douglass* v. *Commonwealth,* 2 Rawle 262, 264; *Ardesco Oil Co.* v. *Richardson,* 63 Pa. St. 162; *Pittsburg & Birmingham Ry.* v. *Pittsburg,* 80 Pa. St. 72. If there are circumstances attending the situation of the buildings that would render it probable that the testatrix could have intended by this clause that any of the buildings should to some extent be raised, the evidence submitted does not disclose them. But in view of the fact that she instructed her executors to slate the roofs, the direction to repair the foundations is to be considered with reference to

such repairs; and when this is done, it is manifest she intended that the foundation of each building should be put in such condition as to afford proper support to the superstructure resting upon it, increased in weight by the slate.

The defendant Clara M. Ladd is a daughter of the testatrix's brother, Samuel Ladd. She claims that she should have paid to her, in addition to the sum of $5,500 which she has received, the sum of $1,000, under the following provision of the will: "I give and bequeath unto the children of my brothers, Daniel and Samuel Ladd, the sum of five hundred dollars [to] each child . . . living at my death, and if either of the children of said Daniel and Samuel shall have lived with me, at any time, a longer period than one year, then such child if living at my decease shall take and receive the sum of one hundred dollars for each year he or she has so lived with me, in addition to said sum of five hundred dollars. And it is my will that my niece, Clara M. Ladd, shall in any event take and receive the full sum of one thousand dollars." At the time of making the will Clara had lived with her aunt eight years, and the plaintiff says that the construction to be given the clause is that Clara was to have $100 a year, in addition to $500, on the same terms as the other nephews and nieces, if she lived with her aunt ten years or more, but in view of the length of time (eight years) which she had then lived with her, it was the aunt's wish that Clara should have $1,000 if the aunt died without Clara having lived with her ten full years; that as Clara had, at the time of her aunt's death, lived with her for a greater period than ten years, she would take under the clause providing for $100 a year, if it were not for the provision in the codicil revoking it; and that the event never happened upon which she was to take the $1,000.

When the codicil was made in May, 1898, revoking the provision of $100 a year in favor of Clara and the other nephews and nieces, Clara had lived with her aunt seventeen years. If the aunt had then died without making the codicil, and Clara is right in her construction of this provision of the will, she would be entitled to receive under it the sums of $500, $1,700, and $1,000. But this does not seem to be the probable meaning of the provision. That portion of it beginning with the words "and it is my will," etc., cannot be read by itself as an independent clause. If it was such, and the testatrix had intended that Clara should receive $1,000 in addition to the gifts of $500 and $100 a year, it cannot be conceived why she made use of the words "shall in any event" and "full sum," when by omitting them the remaining words of the sentence would have clearly expressed her meaning. But these words are not meaningless. They were inserted for a purpose, and must be read with reference to the preceding sentence

and the fact that Clara had then lived with her aunt eight years. When this is done, it is apparent that the gift of $1,000 was pro-visional—not absolute, and was to become absolute only in the event of the testatrix's death without Clara having lived with her ten full years.

*Case discharged.*

All concurred.